**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 45022/45023**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2018 Opinion No. 9** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed:  February 28, 2018** |
| | ) | |
| **v.** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **MARCOS A. RENTERIA,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County.  Hon. George A. Southworth, District Judge.

Order of the district court denying motion to suppress, <u>affirmed</u>.

Ramirez Smith & Tvinnereim; Deena Tvinnereim, Nampa, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

Marcos A. Renteria appeals from the district court's judgment of conviction entered upon his conditional guilty plea to trafficking in cocaine.  Specifically, Renteria challenges the district court's denial of his motion to suppress evidence acquired during a traffic stop.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Renteria made a quick lane change on Interstate 84 in violation of Idaho Code § 49-808, which requires drivers to signal continuously for not less than five seconds before changing lanes.  On that basis, Idaho State Police Trooper Sproat pulled Renteria over.  Upon making contact with Renteria and a passenger, Trooper Sproat requested their identification, vehicle registration, and proof of insurance.  Renteria handed the trooper his driver's license and began to search for the vehicle's registration and proof of insurance.  As Renteria searched for the registration and proof of insurance, Trooper Sprout asked where the two men were coming from;

1

what they did for work; whether they had previously received tickets or been arrested; and whether there were any drugs, marijuana, cocaine, cash, or weapons in the vehicle. Renteria said no. He then provided the vehicle registration to the trooper but could not produce proof of insurance.

After collecting the driver's license and registration, Trooper Sproat walked from Renteria's car back to his patrol car and, while doing so, requested the assistance of a canine officer from dispatch. Once inside his patrol car, Trooper Sproat relayed Renteria's name and date of birth to the dispatcher for purposes of a warrants check and a driver's license check. While awaiting a response from dispatch, the canine officer arrived with his drug-detection dog. Trooper Sproat explained to the canine officer why he suspected Renteria of drug activity. The canine officer removed Renteria and the passenger from the vehicle and proceeded to lead the dog around the vehicle. The drug-detection dog alerted to the presence of drugs three times.

After the dog alerted, dispatch contacted Trooper Sproat and informed him that they could not find any relevant information based on the name and date of birth he had provided. Dispatch then requested Renteria's driver's license number, which Trooper Sprout provided. At this point, the drug dog was inside of Renteria's car where it alerted for a fourth time. The canine officer returned to Trooper Sproat's patrol car after completing the dog sniff and informed Trooper Sproat that the dog had alerted on the car. At approximately the same time, dispatch confirmed to Trooper Sproat that Renteria's license was valid out of Washington. The officers searched the car without a warrant and ultimately located a brick of cocaine that had been wrapped in a shirt and placed inside of a duffle bag in the trunk of Renteria's car. The officers arrested Renteria and his passenger for drug trafficking. At the jail, cocaine was also found on Renteria's person.

In separate cases, the State charged Renteria with trafficking in cocaine, I.C. § 37-2732B, and possession of cocaine, I.C. § 37-2732(c)(1). The cases were consolidated, and Renteria filed a motion to suppress the evidence acquired during the traffic stop arguing his detention had been unlawfully extended. The court held a hearing and denied the motion. Renteria entered a conditional guilty plea to the trafficking charge, reserving the right to appeal the denial of his suppression motion, and the possession charge was dismissed. The district court entered a judgment of conviction against Renteria for trafficking in cocaine and sentenced him to a unified term of nine years with six years determinate. Renteria timely appeals.

## II.

## ANALYSIS

Renteria asserts that the district court erred in denying his motion to suppress. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). Here, Renteria does not challenge the district court's factual findings; therefore, our review on appeal is limited to the application of constitutional principles to the facts as found by the district court.

### A.     Extension of the Stop

Renteria argues that Trooper Sproat unlawfully extended the stop in violation of the Fourth Amendment by deviating from the original purpose of the stop three times: (1) by asking Renteria whether there were drugs in the vehicle; (2) by requesting the assistance of a canine officer before relaying Renteria's information to dispatch; and (3) by discussing why he suspected Renteria of drug activity with the canine officer.

Conversely, the State asserts that the district court did not err in denying Renteria's suppression motion because Trooper Sproat did not extend the traffic stop. We agree.

Trooper Sproat did not extend the stop by asking Renteria whether there were drugs or weapons in the vehicle. This Court has expressly rejected the argument that an officer conducting a routine traffic stop may not ask questions unrelated to the purpose of the stop even if the questioning does not extend the normal length of the stop. *See State v. Parkinson*, 135 Idaho 357, 362, 17 P.3d 301, 306 (Ct. App. 2000) (agreeing with the Fifth Circuit's rejection of the argument that a police officer's questioning, even on a subject unrelated to the purposes of the stop, is itself a Fourth Amendment violation). Renteria relies on *State v. Neal*, 159 Idaho 919, 923 n.1, 367 P.3d 1231, 1235 n.1 (Ct. App. 2016) to support his argument that without reasonable suspicion of drug activity, asking drug-related questions during a routine traffic stop extends the stop in violation of the Fourth Amendment. However, Renteria's argument is

3

contradicted by the very footnote to which he cites. In that footnote, this Court stated that certain generalized questions on topics unrelated to the original purpose of the stop are permissible so long as the unrelated inquiries do not measurably extend the duration of the stop. *Neal*, 159 Idaho at 923 n.1, 367 P.3d at 1235 n.1; *see also Muehler v. Mena*, 544 U.S. 93, 101 (2005) (stating that because unrelated inquiries did not "exten[d] the time [petitioner] was detained . . . no additional Fourth Amendment justification . . . was required"); *Parkinson*, 135 Idaho at 362-63, 17 P.3d at 306-07 (Asking a driver brief questions not otherwise related to the initial purpose of the stop does not necessarily violate the driver's Fourth Amendment rights.). Indeed, the United States Supreme Court held, "An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). Trooper Sproat's questions about drugs and weapons were unrelated to the initial purpose of the stop (i.e. Renteria's failure to signal for five seconds before changing lanes). Nevertheless, the inquiries did not extend the normal length of the stop because Renteria was still in the process of searching for proof of insurance when the officer posed the questions. Accordingly, Trooper Sproat's questioning did not extend the duration of the stop in violation of the Fourth Amendment.

Trooper Sproat did not extend the stop by requesting the assistance of the canine officer from dispatch before relaying Renteria's information. Officers may not prolong a traffic stop beyond the time reasonably necessary to complete their investigation, "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez v. United States*, ___ U.S. ___, ___, 135 S. Ct. 1609, 1615 (2015). However, the Fourth Amendment tolerates certain unrelated investigations that do not lengthen the roadside detention. *See Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1612 ("the critical question is not whether the dog sniff occurs before or after the officer issues a ticket, but whether conducting the sniff adds time to the stop").[1]

---

[1]     The Idaho Supreme Court emphasized that "the United States Supreme Court [was] careful to couch its [Rodriguez] opinion in the 'adds time to' framework. . . . in order to allow for dog sniffs that do not add time to the stop (*i.e.,* dog sniffs in which one officer continues to pursue the original objectives of the stop while a second officer conducts a dog sniff)." *State v. Linze*, 161 Idaho 605, 609 n.1, 389 P.3d 150, 154 n.1 (2016). This case is unlike *Linze*. In *Linze*, an officer stopped writing a citation and stopped a warrant check in order to provide back up for an officer performing a dog sniff on the stopped vehicle. Here, the canine officer conducted the

Trooper Sproat made the brief request for a drug-detection dog to dispatch while walking the short distance from Renteria's car back to his patrol car where he intended to generate an electronic ticket because Renteria did not have proof of insurance. The request for assistance from a canine officer did not add time to the stop. Accordingly, it did not extend the duration of the stop in violation of the Fourth Amendment.

Trooper Sproat did not extend the stop by discussing why he suspected Renteria of drug activity with the canine officer. Beyond determining whether to issue a traffic ticket, an officer's purpose during a traffic stop also may also include conducting ordinary inquiries incident to the traffic stop. *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1611. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Id.* at ___, 135 S. Ct. at 1615. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely, responsibly, and according to law. *Id.* A warrant check makes it possible to determine whether the apparent traffic violator is wanted for one or more previous traffic offenses. *Id.* When Trooper Sproat discussed why he suspected Renteria of drug activity with the canine officer, he was still in his patrol car awaiting a response from dispatch as to the validity of Renteria's driving privileges and as to whether there were any outstanding warrants for Renteria or his passenger. Because dispatch still had not confirmed Renteria's valid driving privileges or responded about whether Renteria or his passenger had any outstanding warrants, the conversation between Trooper Sproat and the canine officer did not unlawfully extend the traffic stop.

In sum, Trooper Sproat did not unlawfully extended the stop in violation of the Fourth Amendment by deviating from the original purpose of the stop by asking Renteria whether there were drugs in the vehicle, requesting assistance from a canine officer before relaying Renteria's information to dispatch, or discussing why he suspected Renteria of drug activity with the canine officer.

---

dog sniff while Trooper Sproat pursued the original objectives of the stop from his patrol vehicle, just as the Idaho Supreme Court in *Linze* suggested would be constitutional under *Rodriguez*.

**B.      Probable Cause to Search the Vehicle**

Alternatively, Renteria argues that even if the alleged deviations from the purpose of the stop were not a violation of the Fourth Amendment, the stop was concluded before the officers began searching the trunk of Renteria's car, and thus, the search of the trunk was an unlawful extension of the stop.  The State argues that Renteria's argument in this regard is unavailing.  We agree.

"The justification for the detention of a motorist is not permanently fixed at the moment the traffic stop is initiated."  *State v. Wigginton*, 142 Idaho 180, 183, 125 P.3d 536, 539 (Ct. App. 2005).  Subsequent observations and events can give rise to legitimate reasons for investigation of criminality differing from that which initially prompted the stop.  *State v. Sheldon*, 139 Idaho 980, 984, 88 P.3d 1220, 1224 (Ct. App. 2003); *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990).  If officers acquire reasonable suspicion of other crimes during the course of a traffic investigation, as was the case here, they may investigate those crimes.  *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1614-15; *Sheldon*, 139 Idaho at 984, 88 P.3d at 1224.  "[W]hen a reliable drug-detection dog indicates that a lawfully stopped automobile contains the odor of controlled substances, the officer has probable cause to believe that there are drugs in the automobile and may search it without a warrant."  *State v. Yeoumans*, 144 Idaho 871, 873, 172 P.3d 1146, 1148 (Ct. App. 2007) (quoting *State v. Gibson*, 141 Idaho 277, 281, 108 P.3d 424, 428 (Ct. App. 2005)).  "If probable cause justifies the search of a vehicle, then it justifies the search of every part of the vehicle and its contents which could conceal the object of the search." *State v. Braendle*, 134 Idaho 173, 175, 997 P.2d 634, 636 (Ct. App. 2000).

The district court correctly stated, "Once that alert occurs, that changes the whole nature of the stop and investigation."  The drug-detection dog alerted on Renteria's lawfully stopped vehicle multiple times before Trooper Sproat completed his investigation into the original purpose of the stop.  When the drug-detection dog alerted, the officers acquired reasonable suspicion of other crimes during the course of a traffic investigation and were justified in investigating those crimes.  Specifically, at the moment the dog alerted on the vehicle, indicating that the car contained the odor of controlled substances, the officers had probable cause to believe that there were drugs in the vehicle.  Thus, the officers were justified in searching every part of the vehicle and its contents which could conceal the drugs without a warrant.  Therefore, the search of the trunk did not extend the stop in violation of the Fourth Amendment.

6

**C.     Diligently Pursuing Duties**

Finally, Renteria appears to argue that Trooper Sproat did not diligently pursue his duties with respect to the initial purpose of the stop because he initially gave Renteria's name and birthdate to dispatch but not Renteria's driver's license number. Insofar as Renteria argues on appeal that Trooper Sproat could have expedited the exchange of information with dispatch by providing Renteria's driver's license number, the argument is unavailing. This argument was not presented to the district court for findings and conclusions. It is well settled that in order for an issue to be raised on appeal, the record must reveal an adverse ruling that forms the basis for assignment of error. *State v. Huntsman*, 146 Idaho 580, 585, 199 P.3d 155, 160 (Ct. App. 2008); *State v. Amerson*, 129 Idaho 395, 401, 925 P.2d 399, 405 (Ct. App. 1996). Renteria introduced no evidence below that tends to show Trooper Sproat's course of action was in violation of any established law or policy. In fact, Trooper Sproat's testimony directly contradicts Renteria's argument in this regard; he testified that he had been trained to give dispatch the driver's name, date of birth, and home state. Ultimately, the record does not reveal an adverse ruling that forms the basis for assignment of error, thus we need not address this argument further.

### III.
### CONCLUSION

Trooper Sproat did not extend the traffic stop. Therefore, the district court did not err in denying Renteria's motion to suppress. The district court's order denying Renteria's motion to suppress is affirmed.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.