IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 45317

| STATE OF IDAHO, | ) | |
|---|---|---|
| | ) | Filed:  September 14, 2018 |
| Plaintiff-Appellant, | ) | |
| | ) | Karel A. Lehrman, Clerk |
| v. | ) | |
| | ) | |
| CORA LEE BURGESS, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County.  Hon. Richard S. Christensen, District Judge.

Order granting motion to suppress, affirmed.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant.  Kenneth K. Jorgensen argued.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for respondent.  Kimberly A. Coster argued.

GRATTON, Chief Judge

The State appeals from the district court's order granting Cora Lee Burgess's motion to suppress evidence found inside her vehicle subsequent to a traffic stop.  The State argues the district court erred in ruling the police abandoned the purpose of the initial traffic stop by unlawfully prolonging the stop to verify the passenger's probationary status.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Shortly before midnight, officers stopped Burgess's vehicle for failing to stop before entering a roadway.  One officer approached Burgess's side of the vehicle and after calling in the stop, another officer approached the passenger side.  The officers talked with Burgess and her passenger for approximately three minutes, gathering identifications, licenses, vehicle registration, and insurance.  Burgess had recently purchased the vehicle and had yet to get

1

insurance. As the officers were gathering information, a third officer arrived. After collecting the information from Burgess and the passenger, the initiating officer asked if either was on probation and both responded in the negative. The officers then returned to their patrol car to check Burgess's information and her passenger's information using the in-car computer.

The video recording of the traffic stop shows that within a minute, the computer announced a separate "return" for each person, relating to warrant and driving status. Burgess's record check was completed. However, instead of beginning the citation process, the officers waited another "minute or two" in order for dispatch to verify the passenger's probationary status. After receiving a negative probation response as to the passenger, one officer walked to the vehicle and requested that Burgess exit the vehicle while the officer prepared a citation for failure to have insurance. As Burgess exited the vehicle, the other officer approached the vehicle and began questioning the passenger. Five minutes later, just as Burgess was being handed her citation, the passenger door was opened, the passenger stepped out, and was handcuffed. The passenger had admitted, during that time, to having drugs and paraphernalia. Burgess was then instructed to "hang back" while the situation with the passenger was resolved. Thereafter, Burgess consented to a search of the vehicle. A clutch containing contraband was found within the vehicle. Burgess was charged with possession of methamphetamine.

Burgess filed a motion to suppress all evidence, arguing that her detention was unreasonably prolonged by police in violation of the Constitutions of the United States and state of Idaho.[1] In her motion, Burgess argued her detention was unlawfully prolonged twice. First, when the officer abandoned the initial purpose of the traffic stop and detoured to investigate the passenger. Second, when the officer restricted her from leaving the scene after issuing her ticket as the passenger's backpack was searched. The district court identified the dispositive issue as "whether delaying moving forward with a traffic stop is lawful in order to verify a passenger's probation status." The district court granted the motion to suppress, ruling that the officers abandoned the purpose of the stop when they waited for dispatch to verify the passenger's

---

[1]     Although Burgess contends that both Constitutions were violated, she provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Burgess's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

probationary status and that the detour unlawfully prolonged the traffic stop.[2] The State timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The State argues that an inquiry into probation or parole status, like the inquiry into outstanding warrants, is related to the mission of traffic law enforcement and officer safety and is not a measure aimed at detecting evidence of ordinary criminal wrongdoing. Therefore, the State argues, the officers did not deviate from the original purpose of the traffic stop. In response, Burgess argues that because the passenger was not the driver or owner of the vehicle, conducting tasks related to him did not serve the mission of the traffic stop or serve any safety purpose. Burgess asserts that suspending issuance of a citation to verify the passenger's probationary status unlawfully extended the stop and was not a justifiable safety measure.

The Fourth Amendment to the United States Constitution provides: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

---

[2] Because the district court granted suppression on the basis that the unlawful prolonging of the stop occurred before the police issued Burgess her citation, the district court did not address whether suppression was also required on the basis that Burgess's stop was unlawfully prolonged when she was instructed to "hang back" and wait after the citation was issued.

3

The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). A seizure for a traffic violation justifies a police investigation of that violation, which includes inquiries beyond determining whether to issue a traffic ticket. *Rodriguez v. United States*, ___ U.S. ___, ___, 135 S. Ct. 1609, 1614 (2015). It encompasses ordinary queries incident to the traffic stop such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Id.* at ___, 135 S. Ct. at 1615. "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.*

Similarly, an officer may take certain precautions to ensure officer safety because "the government's officer safety interest stems from the mission of the stop itself." *Id.* at ___, 135 S. Ct. at 1616 ("Traffic stops are 'especially fraught with danger to police officers,' so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely."). These precautions include ordering all occupants of a vehicle, driver and passengers, to exit a stopped vehicle as a precautionary measure to protect the officer's safety. *Maryland v. Wilson*, 519 U.S. 408, 412 (1997).

Likewise, brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931. However, because addressing the traffic infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. Authority for the seizure thus ends when tasks tied to the infraction are--or reasonably should have been--completed. *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1614; *State v. Linze*, 161 Idaho 605, 608, 389 P.3d 150, 153 (2016).

A traffic stop's purpose does not encompass "[o]n-scene investigation into other crimes." *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1616. Such an investigation detours from the original mission of the stop. *Id.* Yet, not all detours are constitutionally prohibited; only those which prolong the stop for longer than is reasonably necessary to accomplish the mission of the stop. *Id.* Thus, if conducting an unrelated detour measurably extends the stop, the constitutional shield against unreasonable seizures is violated. *Id.* at ___, 135 S. Ct. at 1612. "A seizure justified only by a police-observed traffic violation, therefore, becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.*

4

The reasonableness of the seizure is contingent on what the officers actually do. *Id.* at ___, 135 S. Ct. at 1616.

When an officer abandons his or her initial purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the Fourth Amendment. This new seizure cannot piggyback on the reasonableness of the original seizure unless some new reasonable suspicion or probable cause arises to justify the seizure's new purpose. *Linze*, 161 Idaho at 609, 389 P.3d at 154. Thus, while an officer is justified in inquiring about the ordinary incidents to the traffic stop, without circumstances that justify a reasonable and articulable suspicion of criminal activity, the officer is restrained in extending the search and must diligently complete the task within a reasonable time. *Id.* However, we recently noted that law enforcement may conduct inquiries unrelated to the traffic stop so long as those inquiries do not measurably extend the duration of the stop. *State v. Renteria*, 163 Idaho 545, 548, 415 P.3d 954, 957 (Ct. App. 2018).

The United States Supreme Court and this Court agree that the ordinary inquiries incident to a traffic stop typically include the existence and validity of the driver's license, registration, insurance, and whether there are outstanding warrants. *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1615; *Renteria*, 163 Idaho at 549, 415 P.3d at 958. However, neither has specifically identified whether inquiry into probation or parole status is within the scope of permissible inquiries incident to a traffic stop. In *Rodriguez*, the Court explained, "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'--to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1614 (citations omitted). "[A]n officer may need to take certain negligibly burdensome precautions," such as checking for outstanding warrants, "in order to complete the mission safely," however, unless new reasonable suspicion arises, the authority for the seizure ends "when tasks tied to the traffic infraction are--or reasonably should have been--completed" because the purpose of a traffic stop is to address the traffic violation only. *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1614 (citations omitted); *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

The State argues that the probation check is an ordinary incident to a traffic stop and that it addresses officer safety. The State cites to out-of-state cases that view inquiry into probation or parole status as within the permissible scope of "ordinary inquiries incident to a traffic stop."

5

However, none of those decisions involve the prolonging of a traffic stop to conduct a probationary status check of a passenger through dispatch. The issue before this Court does not involve the constitutionality of questioning a passenger about his probation or parole status, which is how the State has framed the issue; but rather the constitutionality of delaying the issuance of a traffic citation in order to do so.

The State contends that information gathering as to probation or parole status (a) are ordinary inquiries incident to a traffic stop, (b) applies to both the driver and any passengers of the stopped vehicle, (c) does not initiate a criminal investigation unrelated to the stop, and (d) is not an abandonment of or deviation from the purpose of the stop. Implied within the State's argument is that, since these inquiries are part and parcel of a traffic stop, the time necessary to complete the inquiries does not extend the stop. This is so regardless of whether the time necessary to secure the information as to a passenger exceeds that of the driver and the writing of a citation to the driver does not commence until after securing the passenger information. We disagree.

Ordinary inquiries incident to the traffic stop are those that are undertaken for the purpose of "ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1615. The inquiries, ordinarily incident to a traffic stop, typically include the existence and validity of the driver's license, registration, insurance, and whether there are outstanding warrants against the driver. *Id.* Inquiries and information gathering as to passengers of a stopped vehicle are not included in those identified as ordinary inquiries incident to the traffic stop in *Rodriguez*, but, instead, may be permissible because officer safety interests stem from the mission of the stop itself. *Id.* at ___, 135 S. Ct. at 1616.[3]

As to officer safety, we need not determine the scope and extent of passenger inquiries allowable in any given traffic stop. Assuming the officers here had every right to run the passenger's information through dispatch to determine probation status, the question is could they constitutionally do so after all information necessary to cite the driver had been obtained without beginning the citation process? The answer is no. First, as noted, we disagree with the State's primary argument that it need not justify the probation inquiry under officer safety. Second, the State has not shown, under the circumstances of this case (or as a general matter),

---

[3] The State has not shown that a passenger's probation status relates at all to the safe and responsible operation of the vehicle on the road.

6

that the probation status of the passenger was necessary for officer safety in continuing to carry out the purpose of the stop. Finally, absent such justification, the probation inquiry cannot, but did, extend the duration of the stop. In *Roe*, we noted the question of extending a stop relative to passenger information:

> While the first officer identified the driver, the second officer identified the rear seat passengers. The identification . . . occurred simultaneously and, thus, the driver and the passengers were not detained any longer than if the officer had only identified the driver. The second officer's verbal request for the identification of the rear passenger did not extend the duration of the stop beyond the time necessary to effectuate the purpose of the stop.

*Roe*, 140 Idaho at 182, 90 P.3d at 932.

Under the circumstances, the task of verifying the passenger's probation status through dispatch unlawfully extended the duration of the stop. Accordingly, the district court properly granted Burgess's motion to suppress.

## IV.

## CONCLUSION

Because suspending the issuance of the traffic citation in order to run a check on the probation status of the passenger measurably extended the traffic stop, the stop was unconstitutionally prolonged. The district court did not err in granting Burgess's motion to suppress; therefore, the order granting Burgess's motion to suppress is affirmed.

Judge GUTIERREZ and Judge LORELLO **CONCUR**.