# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48513

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

CARSON CODY STARKEY,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: February 2, 2022

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the Third Judicial District, State of Idaho, Payette County. Hon. Susan E. Wiebe, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Carson Cody Starkey appeals from his judgment of conviction entered upon his conditional guilty plea to possession of a controlled substance, Idaho Code § 37-2732(c)(1). Starkey asserts the district court erred when it held the officer did not unlawfully extend the traffic stop and denied his motion to suppress evidence. Because the officer had reasonable suspicion to believe Starkey was involved in criminal activity, the traffic stop was not unlawfully extended and the district court did not err by denying the motion to suppress. Therefore, we affirm Starkey's judgment of conviction.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Officer Harrell of the Fruitland Police Department stopped Starkey's vehicle for failing to have a working rear license plate lamp. As Starkey was gathering his license and registration,

Officer Harrell noticed a straw that appeared to be cut in a manner consistent with use for ingesting narcotics. Officer Harrell went to his patrol car, conducted a license check, and returned to Starkey's vehicle.

Officer Harrell returned Starkey's license and registration and then asked him about the straw. Starkey picked up the straw and handed it to Officer Harrell. As Starkey was handing him the straw, Officer Harrell asked if he could look at it, and Starkey said "yeah." Officer Harrell noticed the end of the straw was burnt, further suggesting it was drug paraphernalia, and he saw a white crystal-like substance inside the straw. Officer Harrell took the straw back to his patrol car and conducted a field narcotics test, which returned presumptive positive for methamphetamine.

Officer Harrell returned to Starkey's vehicle and showed him the positive test result. Officer Harrell told Starkey he was going to search the vehicle and asked Starkey if there was anything illegal in the vehicle; Starkey said no. Another law enforcement officer asked Starkey for consent to search his person and Starkey consented. Officer Harrell and the other officer searched Starkey and found three plastic baggies which contained a white crystal substance. The officers also searched Starkey's vehicle and found a white glass pipe with white crystal residue and twenty-two small plastic baggies. The State charged Starkey with possession of a controlled substance and possession of drug paraphernalia.

Starkey pleaded not guilty and filed a motion to suppress the evidence arguing that Officer Harrell unlawfully extended the traffic stop to ask Starkey about the straw in his vehicle.[1] The State objected, arguing that any extension of the stop was justified by reasonable suspicion. The district court held a hearing on the motion. The parties agreed to have the district court review the police report, bodycam videos, and preliminary hearing transcript, and neither party called any witnesses. After hearing argument from both parties, the district court took the matter under advisement and subsequently denied the motion. The district court made the following factual findings:

> Officer Harrell noticed a red straw in the vehicle while Starkey was searching for his license, registration, and insurance. Starkey appeared to cover up the straw immediately after it was exposed. Officer Harrell recognized this as possible drug paraphernalia, because it was cut in a manner common for ingestion of drugs.

---

[1] Starkey also challenged the validity of the Fruitland City Code provision which justified the initial traffic stop. The district court rejected the argument, and Starkey does not challenge that ruling on appeal.

Upon returning Starkey's driver information, Officer Harrell asked "what's that straw right there that you covered up?" Starkey immediately picked up the straw and handed it through the window as if giving it to the officer. Officer Harrell then said, "can I look at it?" Starkey stated, "yeah." Officer Harrell then took it back to his patrol vehicle, and residue in the straw tested presumptively positive for methamphetamine.

The district court concluded that no unlawful extension of the traffic stop occurred. The district court found that Officer Harrell briefly inquired about the straw while he was handing Starkey's information back and, at that point, the length of the initial purpose of the stop had not been extended because Officer Harrell was still in the process of handing Starkey's information back to him. The district court found that Starkey willingly gave Officer Harrell the straw at which point Officer Harrell had reasonable articulable suspicion to extend the stop. The district court concluded that after the straw tested presumptively positive for methamphetamine, Officer Harrell had probable cause to search Starkey and the vehicle. Accordingly, the district court denied Starkey's motion.

Pursuant to a plea agreement, Starkey entered a conditional guilty plea to possession of a controlled substance and the State dismissed the paraphernalia charge. The district court sentenced Starkey to a unified term of incarceration of five years, with two years determinate, suspended the sentence, and placed Starkey on probation. Starkey timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). Under certain limited circumstances, however, this Court may freely review and weigh the evidence in the same manner as the trial court. *State v. Andersen*, 164 Idaho 309, 312, 429 P.3d 850, 853 (2018). Where the parties did not present any witnesses and this Court has the exact same evidence before it as the trial court considered, this Court need not extend the usual deference to the trial court's evaluation of the evidence. *Id.*

3

## III.

## ANALYSIS

Starkey asserts the district court erred by denying his motion to suppress because Officer Harrell unlawfully extended the traffic stop without reasonable suspicion. Starkey contends the district court lacked substantial and competent evidence to support its finding that Officer Harrell asked Starkey about the straw while returning Starkey's driver's license. Starkey further contends that the inquiry about the straw constituted an unlawful extension of the stop, thereby invalidating Starkey's subsequent consent to the search of the straw and the search of his person. The State asserts that no unlawful extension occurred because Officer Harrell had reasonable suspicion to inquire about the straw, and therefore, Starkey's voluntary acts of handing Officer Harrell the straw and later consenting to a search of his person were valid and untainted.

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." As the text indicates, the "touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *State v. Rios*, 160 Idaho 262, 264, 371 P.3d 316, 318 (2016) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)).

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). In the context of traffic stops, authority for the seizure ends when the tasks related to the infraction are, or reasonably should have been, completed. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Such tasks include ordinary inquiries incident to the traffic stop such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015).

4

An officer's inquiries into matters unrelated to the justification for the traffic stop do not convert that stop into an unlawful seizure in violation of the Fourth Amendment "so long as those inquiries do not measurably extend the duration of the stop." *Johnson*, 555 U.S. at 333; *see also State v. Renteria*, 163 Idaho 545, 548-49, 415 P.3d 954, 957-58 (Ct. App. 2018) (ruling questions about drugs and weapons in vehicle did not prolong stop because defendant was still searching for proof of insurance when officer posed questions). A traffic stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop to which the reasonable suspicion relates. *State v. Linze*, 161 Idaho 605, 609, 389 P.3d 150, 154 (2016). If an officer abandons the purpose of the traffic stop, however, he initiates a new seizure requiring independent reasonable suspicion for that seizure. *Id.* (holding officer abandoned traffic stop by performing back-up function for drug-dog sweep for two and one-half minutes).

Starkey argues Officer Harrell had completed the traffic stop's mission when he asked Starkey about the straw, and therefore, the inquiry about the straw unlawfully extended the stop. The State concedes the body camera video and preliminary hearing testimony demonstrate that Officer Harrell inquired about the straw after he handed back Starkey's documentation. Because the parties agree that the record demonstrates that Officer Harrell inquired about the straw after he had given Starkey his information back, the district court's factual finding regarding the timing of the inquiry about the straw is not supported by substantial and competent evidence. Nonetheless, Officer Harrell had reasonable suspicion to investigate the potential illegal possession of drug paraphernalia prior to returning Starkey's documents, and so Officer Harrell did not unlawfully extend the stop to inquire about the potential new crime.

The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

Officer Harrell testified that based on his training and experience, he recognized the straw as possible drug paraphernalia because the straw was cut in a way that was consistent with using the straw to ingest narcotics. Officer Harrell also observed that Starkey quickly covered the straw

5

with documents after realizing the straw was visible. Officer Harrell's observations during the traffic stop gave rise to reasonable suspicion of a new crime--possession of drug paraphernalia. Once an officer acquires reasonable suspicion of other crimes during the course of a traffic investigation, the officer may investigate the other crimes. *Renteria*, 163 Idaho at 550, 415 P.3d at 959.

Although Starkey argues the facts known to Officer Harrell were insufficient evidence to establish reasonable suspicion, we disagree. Officer Harrell provided specific, articulable facts giving rise to his reasonable suspicion, and based on the totality of circumstances, those facts were sufficient to provide reasonable suspicion for the drug inquiry. Because Officer Harrell developed reasonable suspicion to investigate potential illegal possession of drug paraphernalia before concluding the traffic stop, he could extend the traffic stop to continue the investigation without violating the Fourth Amendment. As no unlawful extension occurred, Starkey's subsequent acts of handing the straw to Officer Harrell and consenting to a search of his person were voluntary acts and did not violate the Fourth Amendment. Accordingly, the district court did not err by denying Starkey's motion to suppress.

## IV.
## CONCLUSION

The district court did not err in denying Starkey's motion to suppress because reasonable suspicion existed to extend the traffic stop to inquire about the straw. Accordingly, we affirm Starkey's judgment of conviction for possession of a controlled substance.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.

6