**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45634**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: January 31, 2019 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| WARDWELL WAYNE MARSH, JR., | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. David C. Nye, District Judge.

Judgment of conviction for felony possession of methamphetamine, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

———————————————————

HUSKEY, Judge

Wardwell Wayne Marsh, Jr. appeals from the judgment of conviction entered upon his conditional guilty plea to possession of methamphetamine. On appeal, Marsh argues the district court erred in denying his motion to suppress the evidence. Because there was sufficient evidence to justify the search of Marsh, we affirm the district court's denial of Marsh's motion to suppress and judgment of conviction.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The district court issued the following findings of fact, some of which are contested on appeal.

While on patrol, a police officer noticed a vehicle without a front license plate. The vehicle pulled into a residence which did not belong to any occupants of the vehicle. The driver

stepped out of the vehicle as the officer initiated a traffic stop. During the stop, the officer observed small puncture marks on the driver's arms that were consistent with intravenous drug use. The officer asked to see the vehicle's registration and insurance. The driver walked around to the passenger side of the vehicle where Marsh was sitting. The driver asked Marsh to exit the vehicle so the driver could retrieve the registration and insurance from the glovebox. As Marsh exited the vehicle, the officer noticed a small, orange plastic cap on the floor which appeared to be a hypodermic syringe cap. The officer recognized this cap as something associated with intravenous drug use.

After seeing the puncture marks on the driver's arms and the cap on the floor, the officer requested a K-9 unit to perform an exterior sniff of the vehicle. The K-9 gave a positive indication, and officers searched the vehicle where they discovered an Altoids tin stuffed between the center console and the driver's seat. The Altoids tin contained baggies of methamphetamine. The officers searched Marsh, the driver, and a passenger in the backseat of the vehicle. Marsh admitted to having drugs on his person and officers found two baggies containing methamphetamine and one baggie containing marijuana on Marsh. Marsh was arrested.

The State charged Marsh with felony possession of a controlled substance, methamphetamine, Idaho Code § 37-2732(c)(1). Marsh filed a motion to suppress all evidence found by the officers during the traffic stop, which the district court denied. Marsh entered a conditional guilty plea and reserved the right to appeal the denial of his motion to suppress. The district court imposed a unified sentence of five years, with three years determinate. The district court suspended the sentence and placed Marsh on supervised probation for a period of four years. Marsh timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

2

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Although Marsh contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Marsh's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

## III.

## ANALYSIS

### A.    Any Errors in the District Court's Factual Findings Are Not Determinative

Marsh argues the district court erred because it made four factual findings that were contrary to the evidence elicited at the motion to suppress hearing. The four contested findings include:

(1)    The district court's finding that the vehicle pulled into a residence which did not belong to any occupant of the vehicle. Marsh argues no witness offered any testimony about who lived in the house where the traffic stop occurred.

(2)    The district court's finding that the officer saw the syringe cap when Marsh was getting out of the car. Marsh challenges the district court's finding regarding *when* the officer saw the syringe cap, but not *where* the officer saw the syringe cap. According to Marsh, the officer testified:  "While [the driver] was going through the glove box, I did see an orange cap laying on the floor in the front passenger area."

(3)    The district court's finding that there were "baggies" of methamphetamine in the Altoids tin. Marsh challenges the number of bags of methamphetamine and argues that the officer only testified there was a single plastic bag of methamphetamine within the Altoids tin.

(4)    The district court's finding that Marsh admitted he had drugs on his person while the officer was searching him. Marsh argues there was no testimony that he made any such admission.

According to Marsh, because these factual findings were not supported by the evidence presented at the motion to suppress hearing, these findings are clearly erroneous and should not

3

be considered by this Court on appeal. The State does not contest that there is no substantial evidence to support three of the district court's findings: (1) the ownership of the residence; (2) whether there were "baggies" of methamphetamine in the Altoids tin; and (3) whether Marsh admitted he had drugs on his person while being searched by the officer. The State asserts these facts are irrelevant to the legal analysis in the case. We agree that these facts are irrelevant to the analysis and conclusion in this case.

As to the remaining contested factual finding, Marsh argues the issue is whether the officer saw the syringe cap when Marsh was getting out of the vehicle, or later, once Marsh was out of the car and the driver was sitting in the passenger seat retrieving items from the glove box. According to Marsh, the timing is relevant because it determines whether the syringe cap should be attributed to the driver or Marsh. If the officer saw the syringe cap while the driver sat in the passenger seat, then Marsh argues it was error to link Marsh to the cap, since he was out of the vehicle at that point in time. Unlike the other three claims, the State disagrees with Marsh and argues there is substantial evidence to support the district court's factual finding. The State asserts the district court made a reasonable inference because Marsh's exit from the vehicle and the driver's entrance into the passenger seat were roughly contemporaneous. In the alternative, the State contends the timing was only marginally relevant because only the location of the syringe cap is determinative in the case.

The officer testified that the driver asked Marsh to get out of the vehicle so the driver could access the glove box. The officer testified that he saw the syringe cap while the driver was going through the glove box. The district court's finding that the officer saw the syringe cap while Marsh was in the vehicle, therefore, is not supported by substantial and competent evidence. That does not end the inquiry.

The issue is whether the ownership of the syringe cap could be attributable to Marsh, the driver, or both. Here, the officer testified that Marsh got out of the vehicle and the driver got into the vehicle. When the officer mentioned the syringe cap to the driver, the driver disclaimed knowledge or ownership. The officer testified that he later said to Marsh that a syringe cap was located under the seat where Marsh was sitting in the vehicle. A reasonable inference is that the exit of Marsh and the entry of the driver into the passenger seat were roughly contemporaneous and that the ownership of the syringe cap could be attributable to either Marsh or the driver. Thus, the district court's finding that the officer noticed a syringe cap as Marsh exited the

4

vehicle, as compared to the testimony from the officer that he saw the syringe cap while the driver was going through the glove box, is a distinction without a legal difference. It was the location of the syringe cap linking the paraphernalia to Marsh, not the timing of the officer's observation, which was relevant to the determination of probable cause to justify the search of Marsh.

**B.     The District Court Did Not Err When It Determined There Was Probable Cause to Search Marsh**

Marsh contends there was no probable cause to justify the search of his person. Marsh criticizes the district court's analysis and claims the totality of the circumstances singles out only the driver of the vehicle as the party who possessed the contraband.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement, or was otherwise reasonable under the circumstances. *Id.* Pursuant to the automobile exception, a warrantless search of a vehicle is authorized when there is probable cause to believe the vehicle contains contraband or evidence of criminal activity. *United States v. Ross*, 456 U.S. 798, 824 (1982); *State v. Smith*, 152 Idaho 115, 120, 266 P.3d 1220, 1225 (Ct. App. 2011). When a reliable drug-detection dog indicates that a lawfully stopped automobile contains the odor of controlled substances, the officer has probable cause to believe that there are drugs in the automobile and may search it without a warrant. *State v. Tucker*, 132 Idaho 841, 843, 979 P.2d 1199, 1201 (1999); *State v. Gibson*, 141 Idaho 277, 281, 108 P.3d 424, 428 (Ct. App. 2005). Here, Marsh does not contest the initial traffic stop, the dog sniff, or the search of the vehicle. Accordingly, the stop, the dog sniff, and the subsequent warrantless search of the vehicle were authorized.

If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *Ross*, 456 U.S. at 825. This rule applies to all containers within a vehicle, without qualification as to ownership or the nature of the container and without a showing of individualized probable cause for each container. *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999). However, occupants of a vehicle continue to have a heightened expectation of privacy, which protects against personal searches without a warrant. *See Houghton*, 526 U.S. at 303. Thus, personal searches of vehicle

5

occupants are not authorized under the automobile exception as a result of the occupant's mere presence within a vehicle, which there is probable cause to search. *United States v. Di Re*, 332 U.S. 581, 586-87 (1948); *Gibson*, 141 Idaho at 282, 108 P.3d at 429. Similarly, a person's mere proximity to people who are suspected of criminal activity, or presence in a location where a search has been authorized by warrant, does not give probable cause to search that person. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). Instead, "a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Id.*

### 1. The district court engaged in a proper totality-of-the-circumstances analysis

Marsh contends there was no probable cause to justify the search of his person. Primarily, Marsh takes issue with the district court's legal analysis and claims the district court improperly relied on *State v. James*, 148 Idaho 574, 225 P.3d 1169 (2010) and utilized the following bright-line rule: when drugs are found in a vehicle, officers have probable cause to arrest all occupants of the vehicle. Marsh asserts the district court erred when it incorporated this bright-line rule rather than a totality-of-the-circumstances analysis that is required by Idaho and United States Supreme Court precedent.

After reviewing the district court's decision on Marsh's motion to suppress, we determine the district court engaged in a proper totality-of-the-circumstances analysis. The district court did not rely solely on *James* in its decision, as Marsh claims. Instead, after acknowledging the heightened standard when searching persons, analyzing the five cases cited by Marsh in his motion to suppress, distinguishing the facts in those cases from the facts in Marsh's case, and determining there was actual evidence of criminal activity, the district court concluded there was probable cause to search Marsh.

The district court found that the discovery of methamphetamine within the vehicle constituted "actual evidence of criminal activity and was the additional probable cause necessary to search the vehicle occupants." Only after reaching the conclusion that the officers had probable cause to search Marsh did the district court reference *James*. The district court explained:

> Additionally, it is important to note that when drugs are found in a vehicle, officers have probable cause to arrest *all of the occupants* of the vehicle. While that did not happen in this case, that does not mean that the officers lacked the probable cause to search the occupants and arrest them.

6

We do not interpret the district court's statement as the equivalent of the application of a bright-line rule as Marsh suggests because the district court did not rely solely on *James* for its decision that there was probable cause to search Marsh; *James* merely provided part of the analysis that was the basis for the district court to deny Marsh's motion to suppress.

## 2. There was probable cause to justify the search of Marsh

Marsh claims there was no probable cause particularized to Marsh that would justify the search of Marsh's person. According to Marsh, the totality of the circumstances singles out only the driver of the vehicle as the person who possessed the contraband.

As previously noted, a search of a person must be supported by probable cause with respect to that person. *Ybarra*, 444 U.S. at 91. The standard of probable cause involves the same quantum of evidence regardless of whether an arrest or a search is involved. *United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004). Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person they have placed under arrest is guilty of a crime. *See State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). Probable cause is not measured by the same level of proof required for conviction. *Id*. Rather, probable cause deals with the factual and practical considerations on which reasonable and prudent persons act. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Julian*, 129 Idaho at 136, 922 P.2d at 1062. When reviewing an officer's actions, the court must judge the facts against an objective standard. *Julian*, 129 Idaho at 136, 922 P.2d at 1062. That is, would the facts available to the officer, at the moment of the seizure or search, warrant a reasonable person in holding the belief that the action taken was appropriate. *Id.* A probable cause analysis must allow room for mistakes on the part of the arresting officer but only the mistakes of a reasonable person acting on facts which sensibly led to his or her conclusions of probability. *State v. Kerley*, 134 Idaho 870, 874, 11 P.3d 489, 493 (Ct. App. 2000).

Here, the narrow issue involves whether there was probable cause to search Marsh. In his motion to suppress and again on appeal, Marsh does not challenge the initial traffic stop, the dog sniff, or the search of the vehicle. Likewise, Marsh does not challenge the evidence of drug use discovered during the traffic stop, which includes the syringe cap located on the floor of the front passenger seat where Marsh was sitting as well as the methamphetamine in the Altoids tin

7

which was stuffed between the center console and the driver's seat. Marsh nonetheless claims the officers lacked probable cause to search Marsh's person.

For support, Marsh relies on *Gibson* and *Di Re* for the proposition that there was no probable cause particularized to Marsh that would justify the warrantless search of his person. We determine *Gibson* and *Di Re* are distinguishable from the case at bar.

In *Gibson*, a drug dog gave a positive indication while Gibson was inside a vehicle. *Gibson*, 141 Idaho at 280, 108 P.3d at 427. Gibson exited the vehicle, was patted down for weapons, and the officers removed a wallet from Gibson's jacket. *Id.* Although the search of the vehicle did not uncover any drugs, the officers nonetheless searched Gibson's wallet and discovered methamphetamine. *Id.* This Court held that neither the automobile exception to the warrant requirement nor a search incident to lawful arrest justified the warrantless search of Gibson. *Id.* at 281-86, 108 P.3d at 428-33. Although a drug dog gave a positive indication, the officers in *Gibson* found no additional evidence of contraband or drug use until they searched Gibson's wallet. *Id.* at 286, 108 P.3d at 433. Like *Gibson*, a drug dog gave a positive indication in the case at bar. However, unlike *Gibson*, there is undisputed evidence that the officer saw a syringe cap in the vehicle and discovered methamphetamine in an Altoids tin, both of which could reasonably be attributed to Marsh. The search of Marsh occurred after officers found evidence of drug use, thereby making Marsh's facts distinguishable from *Gibson*.

In *Di Re*, officers approached a vehicle with Di Re and two other occupants in the vehicle. *Di Re*, 332 U.S. at 583. The officers saw illegal gas ration coupons in the hand of one of the vehicle's occupants, who was a police informant. *Id.* After questioning, the officers learned that the driver of the vehicle provided the informant with the illegal coupons. *Id.* Although a subsequent search of Di Re revealed illegal coupons, the Supreme Court held that this search of Di Re was not justified under the automobile exception or the search incident to arrest exception to the warrant requirement. *Id.* at 583-95. The Supreme Court explained there was no evidence that Di Re engaged in illegal activity prior to the search of his person. The informant was the only person who was found visibly possessing illegal coupons, and officers had previous information that the informant was selling illegal coupons only to the driver of the vehicle. *Id.* at 592. Additionally, when questioned at the scene, the informant indicated that only the driver of the vehicle was a guilty party, and not Di Re. *Id.* at 594. Unlike *Di Re*, here there was evidence of illegal activity that could reasonably be attributed to Marsh. The officer

8

saw a syringe cap under the passenger seat of the vehicle where Marsh was sitting. Additionally, the Altoids tin containing methamphetamine was discovered stuffed between the center console and the driver's seat, which would also be accessible to Marsh. Marsh was therefore not searched solely due to his presence in the vehicle, but because of his presence and his access to the drugs and drug paraphernalia. As such, *Di Re* is distinguishable from our case.[1]

The district court did not err when it found there was probable cause to justify the search of Marsh. Here, an officer observed a syringe cap under the passenger seat where Marsh had been sitting. The officer recognized this cap as something associated with intravenous drug use and requested a K-9 unit to perform an exterior sniff of the vehicle. The K-9 gave a positive indication, and officers discovered methamphetamine in an Altoids tin, which was located between the center console and the driver's seat. The evidence of drug use, therefore, was discovered in close proximity to Marsh, who was sitting in the front passenger seat of the vehicle when the stop was initiated. While proximity alone does not warrant probable cause, it is a reasonable inference that an individual riding in the passenger seat would hide methamphetamine and paraphernalia near the center console or on the floor underneath the seat. Both areas were within reach of Marsh and accessible to him. There was sufficient evidence to link Marsh to the drugs in the vehicle and consequently, provide probable cause for the search.

Marsh's final argument claims the location of the syringe cap and the Altoids tin implicate only the driver of the vehicle, and not Marsh. We disagree with Marsh's distinction. If the evidence of drug use in the vehicle is sufficient to implicate the driver, as Marsh suggests, then by the same logic, the evidence is sufficient to implicate Marsh as well. There is no reason to believe the Altoids tin stuffed between the center console and the driver's seat and a syringe cap located under the passenger seat could solely be attributed to the driver of the vehicle. The totality of the circumstances support the district court's finding that there was probable cause to search Marsh.

---

[1] *Gibson* and *Di Re* are also distinguishable because they analyzed whether a search was justified pursuant to the automobile exception and the search incident to arrest exception to the warrant requirement. *See United States v. Di Re*, 332 U.S. 581, 583-87 (1948); *State v. Gibson*, 141 Idaho 277, 281-86, 108 P.3d 424, 428-33 (Ct. App. 2005). The district court in our case did not rely on the automobile exception or the search incident to lawful arrest exception in order to justify the search of Marsh. Rather, the district court limited its decision to the narrow argument set forth in Marsh's motion to suppress, which challenged only the search of Marsh's person.

## IV.

## CONCLUSION

There was sufficient evidence to justify the search of Marsh. Therefore, the district court did not err in denying Marsh's motion to suppress. Accordingly, we affirm the district court's denial of Marsh's motion to suppress and the judgment of conviction.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.